J-S10030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KEVIN JAMES MCGUIRE :
:
Appellant : No. 1306 MDA 2024

Appeal from the Judgment of Sentence Entered March 27, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004393-2023

BEFORE:  BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY OLSON, J.:                    **FILED: APRIL 29, 2025**

Appellant, Kevin James McGuire, appeals from the judgment of sentence entered March 27, 2024, as made final by the denial of his post-sentence motion on August 6, 2024.  We affirm.

On December 26, 2023, Appellant pled guilty to involuntary deviate sexual intercourse ("IDSI") with a child and corruption of minors.[1]  Thereafter, the trial court ordered the Pennsylvania Sexual Offenders Assessment Board ("SOAB") to determine whether Appellant met the criteria of a Sexually Violent Predator ("SVP").

Appellant's assessment was performed by Robert M. Stein, Ph.D., a licensed psychologist and member of the SOAB.  Within the assessment report, Dr. Stein described the factual basis for Appellant's offenses:

---

[1] 18 Pa.C.S.A. §§ 3123(b) and 6301(a)(1)(ii), respectively.

The instant offense came to light following [an] investigation for a similar sex crime in South Carolina[.] During the [South Carolina] investigation, concern was raised that [Appellant] babysat children in [Pennsylvania]. At that point[,] the investigation in [Pennsylvania] was initiated.

On [March 30, 2020,] the victim's mother contacted [the] police regarding her daughter, [A.B.], age [six], and a family friend and ex-housemate of [Appellant]. Mother reported that she, her husband, [A.B.], and her other daughter[, M.B.,] (age [four]), lived with [Appellant] between December 2017 and September 2019 at [Appellant's] residence in York County[, Pennsylvania]. [A.B.] told her mother that [Appellant] sexually abused her on several occasions. She told [her m]other that [Appellant] did "mommy and daddy things" to her and put his "pee pee" inside her.

In the forensic interview on [May 1, 2020], the child reported that "Uncle Kevin" did bad stuff to her since she was [five-years-old]. She described penis-vagina penetration on multiple occasions. [Sh]e pointed to her tongue and stated that [Appellant] put that part where her "pee comes from." She described an occasion in which she was in the bathroom with [Appellant] and he suggested that she could urinate in his mouth. [A.B.] reported that she witnessed [Appellant] putting his penis in [M.B.'s] vagina and saw him put his tongue on [M.B.'s] vagina. She stated that [Appellant] told [M.B.] to lay down, be quiet, and not get him in trouble.

[M.B.] was forensically interviewed on [May 14, 2020]. She advised that [Appellant] would ask her to play home with him. She explained that the rules were someone would be the baby and others had to be the [d]ad or [m]om. They did this "like [seven] time[s]." He would go to sleep when they were done playing home and sometimes she would sleep with him.

On [June 5, 2020, the] police spoke with [Appellant's] roommate. He reported that it was "questionable and odd" how [Appellant] would dote on the girls and how they were in his room quite often playing video games. He noted that [Appellant] was a "self-proclaimed nudist" and would walk around the house naked under his robe. He had numerous conversations with [Appellant] about needing to dress more appropriately when around the kids. He recalled one time when [Appellant] was with [M.B.] in the kitchen and was wearing

boxer briefs that were exposed from under his robe. He had a noticeable penile erection.

Appellant's SOAB Assessment Report, 2/8/24, at 2.

Dr. Stein next considered the 15 factors required by 42 Pa.C.S.A. § 9799.24(b):

**FACTS OF THE CURRENT OFFENSE:**

1. **Whether the offense involved multiple victims**: The offense involved multiple victims, which is associated with greater "practice" or risk taking than an offense involving a single victim.

2. **Whether the individual exceeded the means necessary to achieve the offense**: He did not exceed the means necessary to achieve the offense.

3. **The nature of the sexual contact with the victims**: Contact included oral penetration as *per* the offense to which he pled guilty.

4. **The relationship of the individual to the victims**: The victims were unrelated family friends. They referred to [Appellant] as "Uncle Kevin."

5. **Age of the victims**: The victims were ages of [four] and [five]. This is consistent with pedophilic interest and behavior.

6. **Whether the offense included a display of unusual cruelty by the individual during the commission of the crime**: There was no unusual cruelty.

7. **The mental capacity of the victims**: The victims were of normal capacity commensurate of their young ages.

**PRIOR OFFENSE HISTORY:**

1. **The individual's prior criminal record (sexual and nonsexual)**: There is a sexual criminal history that involved similar crimes. The instant offense was

- 3 -

committed before the convicted sex offenses in [South Carolina].

2. **Whether the individual completed any prior sentence**:  He is currently incarcerated following the [South Carolina] conviction.

3. **Whether the individual participated in available programs for sexual offenders**: It is not known if he is currently in prison-based sex offender treatment.

**CHARACTERISTICS OF THE DEFENDANT:**

1. **Age of the individual**: [Appellant] is [43-years-old].  This is associated with decreased risk.

2. **Use of illegal drugs by the individual:** There is no information about use of illegal drugs.

3. **Any mental illness, mental disability, or mental abnormality**: There is no mental health history reported.

4. **Behavioral characteristic that contribute to the individual's conduct**: The instant offense and the prior conviction indicate pedophilic behaviors involving [three] young child victims.

Appellant's SOAB Assessment Report, 2/8/24, at 3-4.

Dr. Stein opined that Appellant suffers from the mental abnormality of "Pedophilic Disorder."  *Id.* at 5.  He noted that, while Pedophilic Disorder "is potentially manageable with successful completion of treatment," it is "not a curable condition."  *Id.*  In addition, because Appellant molested "three prepubescent girls," Dr. Stein found that there was "sufficient evidence" that "ma[de] sexual re-offending likely if [Appellant were] allowed contact with young girls."  *Id.* Based upon all the foregoing, Dr. Stein concluded that

Appellant "me[t] the criteria to be classified as a[n SVP] under the [Sex Offender and Registration Act ('SORNA')]."[2] *Id.* at 6.

On March 27, 2024, the trial court conducted a joint SVP and sentencing hearing. At this hearing, the trial court admitted Dr. Stein's January 17, 2023 assessment report and Dr. Stein testified consistently with his report. *See* N.T. SVP and Sentencing Hearing, 3/27/24, at 4-19. Dr. Stein was the only testifying witness. Ultimately, the trial court held that the Commonwealth presented clear and convincing evidence that Appellant met the criteria for designation as an SVP and a Tier III registrant under SORNA. The trial court also sentenced Appellant to an aggregate term of nine to 18 years' incarceration, followed by three-year mandatory re-entry supervision.

On April 8, 2024, Appellant filed a post-sentence motion where he claimed that the trial court's SVP determination was against the weight of the evidence. Focusing on Dr. Stein's testimony that Appellant's age at the time of the offenses (*i.e.* over 35 years old) was associated with a decreased risk of future offenses, Appellant averred:

> Dr. Stein's assessment that [Appellant] met the statutory criteria failed to fully account for [Appellant's] late onset of sexual/criminal activity.

---

[2] 42 Pa.C.S.A. §§ 9799.10 to 9799.41.

Appellant's Post-Sentence Motion, 4/8/24, at 2. Appellant's post-sentence motion was denied by operation of law on August 6, 2024.[3] This timely appeal followed.

Appellant raises the following issue on appeal:

[Whether the Appellant's SVP designation is against the weight of the evidence?].

*See generally* Appellant's Brief at 4.

Where an appellant claims that a SVP determination is against the weight of the evidence, we apply the following standard:

Our standard of review of a weight of the evidence claim is for an abuse of discretion. Appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Indeed, it is oft-stated that the trial court's [rejection of] a weight of the evidence claim is the least assailable of its rulings. We discern no basis on which to distinguish our standard of review on weight claims, whether challenging the weight of the evidence to support a guilty verdict or a trial court's SVP determination.

[As with conventional weight claims which seek a new trial, a weight claim that seeks re-assessment of an adverse SVP determination carries a preservation requirement.] A defendant must put the issue before the trial court in the first

_____

[3] Pursuant to Rule of Criminal Procedure 720, the trial court must decide a post-sentence motion within 120 days of its filing. *See* Pa.R.Crim.P. 720(B)(3)(a). If the trial court fails to do so, the motion is deemed denied by operation of law. *Id.* Appellant herein filed his post-sentence motion on April 8, 2024. As such, the trial court needed to rule on Appellant's motion on or before August 6, 2024. The trial court did not issue an order denying Appellant's motion until August 8, 2024. Importantly, this error did not affect the timeliness of Appellant's appeal. Appellant's notice of appeal was filed on September 6, 2024: 30 days after his post-sentence motion was denied by operation of law.

instance because it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Commonwealth v. Ratushny*, 17 A.3d 1269, 1272 (Pa. Super. 2011) (internal citations and quotation marks omitted).

On appeal, Appellant argues that the trial court's "determination that [he] met the criteria for [a] SVP was manifestly unreasonable" and against the weight of the evidence. Appellant's Brief at 11. In developing this position, Appellant challenges Dr. Stein's ultimate decision to designate Appellant as an SVP, noting that Dr. Stein acknowledged "multiple factors" that weighed against "finding that [he] was likely to re[-]offend." *Id.* More specifically, Appellant claims that his age, the late-onset of criminal activity, and his otherwise lack of a criminal record, demonstrate that "re-offending was unlikely to [] occur." *Id.* at 15.

"The determination of a defendant's SVP status may only be made following an assessment by the [SOAB] and [a] hearing before the trial court." *Commonwealth v. Fuentes*, 991 A.2d 935, 941-942 (Pa. Super. 2010) (*en banc*) (citation omitted). To designate a defendant an SVP, the trial court must conclude that the Commonwealth proved, by clear and convincing evidence, "that the individual is a [SVP]." 42 Pa.C.S.A. § 9799.24(e)(3).

The clear and convincing standard governing a determination of SVP status "requires evidence that is so clear, direct, weighty, and convincing as to enable the trier[-]of[-]fact to come to a clear conviction, without hesitancy,

of the truth of the precise facts in issue." ***Commonwealth v. Meals***, 912 A.2d 213, 219 (quotation marks, citations, and brackets omitted).

Section 9799.12 of SORNA defines the term "sexually violent predator" as:

> [a]n individual who committed a sexually violent offense under the laws of this Commonwealth or an attempt, conspiracy or solicitation to commit a sexually violent offense under the laws of this Commonwealth on or after December 20, 2012, who is determined to be a sexually violent predator under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9799.12; ***see also Commonwealth v. Butler***, 226 A.3d 972, 992 (Pa. 2020) (stating, an SVP, in addition to having been convicted of a sexually violent offense, is a person "who [has] been individually determined to suffer from a mental abnormality or personality disorder such that they are highly likely to continue to commit sexually violent offenses"). A "sexually violent offense" is defined by SORNA as "[a]n offense specified in [S]ection 9799.14 (relating to sexual offenses and tier system) as a Tier I, Tier II[,] or Tier III sexual offense committed on or after December 20, 2012, for which the individual was convicted." 42 Pa.C.S.A. § 9799.12. "Predatory" is defined by SORNA as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." ***Id.***

After a defendant has been convicted of a sexually violent offense, but before sentencing, the trial court is required, under Section 9799.24 of

- 8 -

SORNA, to order the SOAB to conduct an "assessment of the individual to determine if the individual should be classified as a [SVP]." 42 Pa.C.S.A. § 9799.24(a) and (b). In performing its assessment, the SOAB examines, among other things, the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of re[-]offense.

42 Pa.C.S.A. § 9799.24(b)(1-4).

As our Supreme Court has held, the above factors do not "operate as a checklist where each factor weighs, in some absolute fashion, either for or against an SVP classification." *Meals*, 912 A.2d at 222. Therefore, and contrary to Appellant's current claim, the mere fact that some of the above factors weighed against finding that Appellant was likely to re-offend does not mean that the trial court abused its discretion in rejecting a challenge which alleged that Appellant's SVP designation was against the weight of the evidence. Moreover, as the trial court ably explained, its denial of Appellant's post-sentence motion was clearly within its discretion:

> Dr. Stein concluded that, in his professional opinion within a reasonable degree of professional certainty, [Appellant] me[t] the criteria to be classified as an SVP under [SORNA].
>
> The [c]ourt found Dr. Stein's testimony to be credible.
>
> [Appellant] contends that Dr. Stein failed to fully account for [Appellant's] late onset of sexual/criminal activity and that Dr. Stein failed to give that late onset proper weight. While it is unclear what [Appellant] means by "fully account," this contention is without merit.
>
> Dr. Stein was questioned on cross-examination [] regarding [Appellant's] age at the time of the sexual offenses. In this regard, Dr. Stein testified that:
>
> - The events in the instant case occurred in 2019, and [Appellant] was approximately [38]-years-old at that time.
>
> - The offenses in the instant case occurred prior to [Appellant's] conviction for the sexual molestation of a six-year-old in South Carolina.

- 10 -

- All of the child sexual abuse occurred somewhere between 2017 and 2019.

While recognizing that there was no criminal history prior to that time frame, Dr. Stein explained that "[s]ome people have these urges for many, many years that they resist and then something happens in their life, situations, conditions, they can [not] resist anymore. I do [not] know for sure. He can explore that in treatment, but that [is] just speculation."

Dr. Stein further acknowledged the fact that [Appellant] being over the age of 35 at the time of the offenses is associated with a slight decreased risk of re-offending. However, Dr. Stein further indicated that "with molestation of three prepubescent girls, there is sufficient evidence for a condition that makes sexual re-offending likely if allowed contact with young girls."

Moreover, Dr. Stein determined that the most significant factors in the instant case were[:]

- Type of conduct (penetrative sexual assault);

- The fact that it was penetrative sexual assault, as opposed to inappropriate touching, and that these very serious actions require a lot mentally to cross those barriers from urges to [actual] behavior[;]

- Number of victims (two), plus one from South Caroline involving another very young victim; and

- The very young ages of the victims (four and five years old).

[W]ith regard to the various assessment factors, the factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation. The fact that Dr. Stein placed greater weight on [the factors listed above, and relied less heavily on the decreased risk of re-offense associated with Appellant's age,] was appropriate under the facts and circumstances of this case, and for the reasons provided by Dr. Stein at the SVP hearing and in his report.

\*\*\*

[Based upon the foregoing,] Dr. Stein complied with all the requirements [of] 42. Pa.C.S.[A]. § 9799.24 and expertly concluded to a reasonable degree of professional certainty that

[Appellant] me[t] the requirements to be designated as an SVP. At the conclusion of the SVP hearing, the [c]ourt found Dr. Stein to be credible, and determined that his testimony and the contents of his assessment proved to the [c]ourt by clear and convincing evidence that [Appellant] met the criteria for an SVP. Given the foregoing . . . this conclusion is not contrary to the evidence, does not shock the [c]ourt's sense of justice and is appropriate.

Trial Court Opinion, 8/8/24, at 5-7 (internal citations omitted).

We agree with the trial court's able explanation and conclude that it did not abuse its discretion when it denied Appellant's weight of the evidence claim.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/29/2025